IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Myra Butler, | CV 17-04664-PHX-MHB |
| Plaintiff, | **ORDER** |
| vs. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Myra Butler's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

On September 4, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning June 14, 2014. Her application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing before an administrative law judge. A hearing was held on January 10, 2017, and the ALJ issued a decision on March 13, 2017, finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\
\\\

**II. STANDARD OF REVIEW**

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quotation marks omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record ... yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. See Reddick, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." Gallant, 753 F.2d at 1453 (citations omitted); see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); see Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether a plaintiff is or is not disabled. Rather, the Court's inquiry is

constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

### III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 14, 2014 – her alleged onset date. (Tr. at 19.) At step two, he found that Plaintiff had the following severe impairments: degenerative changes of the lumbar spine and obesity. (Tr. at 19-20.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 of the Commissioner's regulations.

(Tr. at 20.) After consideration of the entire record, the ALJ found that Plaintiff retained the residual functional capacity "to perform sedentary work (lifting and carrying ten pounds occasionally and less than ten pounds frequently) as defined in 20 CFR 404.1567(a) except the claimant is limited to standing and/or walking up to two hours and sitting at least six hours in an eight-hour day. The claimant is limited to occasionally climbing ramps and stairs, but never ladders, ropes, or scaffolds. The claimant is limited to occasionally stooping, but never crawling or crouching. The claimant should avoid concentrated exposure to extreme cold, wetness, humidity, vibration, unprotected heights, and moving and dangerous machinery."[1] (Tr. at 20-24.) The ALJ found that Plaintiff is capable of performing past relevant work as a placement coordinator, finding that this work does not require the performance of work-related activities precluded by the residual functional capacity. (Tr. at 24-25.) Thus, the ALJ concluded that Plaintiff has not been under a disability from June 14, 2014, through the date of his decision. (Tr. at 25.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh the medical source opinion evidence; and (2) failing to properly consider her subjective complaints. Plaintiff requests that the Court remand for a determination of benefits.

**A.   Medical Opinion Evidence**

Plaintiff contends that the ALJ erred by improperly weighing the medical opinion evidence. Specifically, Plaintiff argues that the ALJ erred in rejecting the assessment of Plaintiff's treating pain management specialist Wladislaw Fedoriw, M.D., and "ignoring" the assessment of occupational therapist Mary Hymen.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But, the

---

[1] "Residual functional capacity" (or "RFC") is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

1   Commissioner generally must defer to a physician's medical opinion, such as statements
2   concerning the nature or severity of the claimant's impairments, what the claimant can do,
3   and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

4   In determining how much deference to give a physician's medical opinion, the Ninth
5   Circuit distinguishes between the opinions of treating physicians, examining physicians, and
6   non-examining physicians. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally,
7   an ALJ should give the greatest weight to a treating physician's opinion and more weight to
8   the opinion of an examining physician than a non-examining physician. See Andrews, 53
9   F.3d at 1040-41; see also 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered
10  when evaluating opinion evidence, including length of examining or treating relationship,
11  frequency of examination, consistency with the record, and support from objective evidence).

12  If a treating or examining physician's medical opinion is not contradicted by another
13  doctor, the opinion can be rejected only for clear and convincing reasons. See Lester, 81 F.3d
14  at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining
15  physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or
16  by objective medical findings," Batson v. Commissioner, 359 F.3d 1190, 1195 (9th Cir.
17  2004), or if there are significant discrepancies between the physician's opinion and her
18  clinical records, see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

19  When a treating or examining physician's opinion is contradicted by another doctor,
20  it can be rejected "for specific and legitimate reasons that are supported by substantial
21  evidence in the record." Lester, 81 F.3d at 830-31 (citation omitted). To satisfy this
22  requirement, the ALJ must set out "a detailed and thorough summary of the facts and
23  conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton
24  v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do
25  more than offer his conclusions. He must set forth his own interpretations and explain why
26  they, 'rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir.
27  1988).
28

Physician's assistants, nurse practitioners, chiropractors, and similar providers are medical professionals, but they are not considered "acceptable medical sources," under the Social Security regulations (the regulations were later amended – the amendments are not applicable here). 20 C.F.R. § 404.1513(d)(1). Rather, these medical professionals are considered "other sources." Id. The distinction between "other sources" and "acceptable medical sources" is significant because only "an acceptable medical source" may be considered a "treating source." 20 C.F.R. §§ 404.1502. Thus, these "other sources" are not entitled to the same deference as "acceptable medical sources." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ may discount testimony from "other sources" simply by giving "reasons germane to each witness for doing so." Id. (citations and internal quotations omitted).

### 1. Wladislaw Fedoriw, M.D.

The opinion of Dr. Fedoriw was contradicted by other physicians, as well as, other objective medical evidence of record. As such, the specific and legitimate standard applies.

Dr. Fedoriw began treating Plaintiff in December 2015. Dr. Fedoriw prescribed Tramadol, MS Contin, and Oxycodone, and monitored Plaintiff's pain and medication effectiveness. (Tr. at 493-94 (December 2015), 490-92 (January 2016), 487-89 (February 2016), 484-86 (March 2016), 482-83 (April 2016), 480-81 (May 2016), 478-79 (June 2016), 476-77 (July 2016).) In August 2016, Dr. Fedoriw noted that Plaintiff followed his recommendation to obtain an inversion table for pain relief, but it made her pain worse. (Tr. at 474.) Dr. Fedoriw prescribed a lumbar traction unit. (Tr. at 474.) Symptoms and medications were unchanged throughout 2016. (Tr. at 472-73 (September 2016), 470-71 (October 2016), 468-69 (November 2016).)

In December 2016, Dr. Fedoriw completed a medical assessment of ability to do work-related physical activities. (Tr. at 496-97.) Dr. Fedoriw opined that Plaintiff could sit more than three but less than four hours in an eight-hour workday, and could stand or walk for less than two hours in an eight-hour workday. (Tr. at 496.) Plaintiff had to alternate between sitting, standing, or walking, and needed a rest period of 10-15 minutes with

position changes. (Tr. at 496.) Dr. Fedoriw rated moderately severe pain and fatigue, defined as a limitation causing a person to be "off task 16-20% of an 8-hour work day." (Tr. at 497.) In addition, Plaintiff would be expected to miss six or more days of work per month due to her impairments. (Tr. at 497.)

The ALJ gave Dr. Fedoriw's opinion little weight stating:

> Wladislaw Fedoriw, M.D., claimant's treating physician, submitted a medical assessment of the claimant's ability to do work related activities. Dr. Fedoriw reported that the claimant would be substantially limited to functioning less than at a sedentary level. The limitations assigned by Dr. Fedoriw would result in the claimant's ability to perform any work. (Exhibit 12F). Generally, more weight is afforded to the opinion of a treating source as the treating source is most often in the best position to provide a detailed, longitudinal picture of the claimant's medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings or one-time examinations. (20 CPR 404.1527) If a treating source's medical opinion is well-supported and consistent with the other substantial evidence in the case record, it must be given controlling weight. (20 CPR 404.1527). ... Dr. Fedoriw's findings are substantially incongruent with the available medical record. Objective imaging has noted degenerative changes of the claimant's lumbar spine. (Exhibits 1F, p. 1; 2F, p. 8; 7F, p. 49; and 11F, p. 1). However, the claimant has also demonstrated no difficulty squatting during an examination. Additionally, the claimant was able to demonstrate normal gait and was able to complete several walking exercises without difficulty. This is inconsistent with Dr. Fedoriw's limitations to sitting, standing, and walking. Finally, physical examinations also noted normal findings. (Exhibits 2F, p. 4; 3F, pp. 2 and 3; 4F, p. 7; 6F, pp. 1, 4, 8, and 9; 7F, pp. 38 and 56; 8F, pp. 1, 3, 4, 6, 8, and 9; and 10F, pp. 2-4, 8, 9, 11, and 12). Therefore, these opinions are assigned little weight.

(Tr. at 23.)

An ALJ may discount the opinion of a treating physician if it is inconsistent with the objective medical record as whole – or as stated here "substantially incongruent with the available medical record." See Batson, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.") (internal citations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ need not accept a medical opinion that is brief, conclusory, or inadequately supported by clinical findings); Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (a lack of supporting clinical findings is a legitimate reason to reject a physician's opinion); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (the incongruity

between a physician's opinion and the patient's record is a specific and legitimate reason to discount a physician's opinion).

Here, in support of his finding, the ALJ cited to numerous conflicts throughout the medical record between Dr. Fedoriw's opined-to limitations and Plaintiff's physical abilities, including, her ability to squat without difficulty, demonstrate normal gait, and complete walking exercises without difficulty during examination. The ALJ also cited to multiple examples throughout the medical record demonstrating mostly unremarkable and normal findings. The Court finds that the ALJ set forth a detailed summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings. The ALJ's finding that the objective medical evidence did not support Dr. Fedoriw's opinion is a legitimate reason.

### 2. Mary Hymen, MOT, OTR/L

In July 2015, licensed occupational therapist Mary Hymen examined Plaintiff. OTR Hymen observed Plaintiff's knee squat and crouch did not meet "Occasional criteria." (Tr. at 289.) Plaintiff's ability to stand was "reduced from normal due to posture, pain and for short periods only." (Tr. at 290.) Plaintiff reported significant back pain and "lying down, use of narcotic medication and Tramadol help reduce her pain and that sitting, and standing increase her pain." (Tr. at 290.) Plaintiff was also:

> [T]aking significant medication and has been for a long time. She reports that she has trouble concentrating, paying attention, following moderately complex conversations and instruction[s] and demonstrated that when completing her paperwork, [she needed] repeat explanations and alternate instructions, sometimes with visual aids, to complete the tasks.

(Tr. at 290.) Plaintiff reported her activities of daily living, such as making coffee or food and performing self-care. (Tr. at 290.) Plaintiff often had to change positions from sitting or standing to lying down or reclining in a comfortable chair. (Tr. at 290.) OTR Hymen stated that Plaintiff "does not qualify at the any physical demand level" of the U.S. Department of Labor classification criteria. (Tr. at 291.) Plaintiff "does not meet the requirements to perform her current full time position due to inability to sit. In addition she has difficulty

comprehending some tasks and is slow to complete unfamiliar tasks, [and] this may not meet the position standards." (Tr. at 291.)

As established previously and, as relevant to the instant case, occupational therapists would be categorized as "other sources" under the regulations. Their opinions may be discounted if the ALJ gives reasons germane to each witness for doing so. Here, the ALJ failed to consider, much less mention, any part of OTR Hymen's assessment.

The Ninth Circuit has set forth its standard for harmless error: "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

In this case, the Court cannot confidently conclude that the ALJ's error in failing to address OTR Hymen's assessment was harmless – given that she found that Plaintiff "does not qualify at the any physical demand level" of the U.S. Department of Labor classification criteria, and "does not meet the requirements to perform her current full time position due to inability to sit, ... and may not meet the position standards." The Court will remand this matter for further proceedings on this issue.

**B.     Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d

1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff was 58 years old as of the hearing, and had a high school education. (Tr. at 34.) Plaintiff's past relevant work included jobs at the sedentary or light, skilled level. At the hearing, Plaintiff testified she had to quit her last job when it became too difficult to perform her duties because of back pain. (Tr. at 36.) Plaintiff often missed a whole day of work, or

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 10 -

had to leave early, because of pain. (Tr. at 41.) Plaintiff also found it hard to concentrate on her job duties due to pain. (Tr. at 42-43.) Plaintiff was absent from work almost the entire month of January 2014 because of increased back pain. (Tr. at 41-42.) Plaintiff missed work at least once per week thereafter until she stopped working altogether in June 2014. (Tr. at 42.)

Plaintiff had back pain, which radiated into her left leg. (Tr. at 37-38, 39.) She occasionally used a cane "When I feel unstable, I find that it helps getting me up and down out of chairs, walking, that type of thing." (Tr. at 38.) Plaintiff had increased pain with standing, sitting, or performing household chores for too long. (Tr. at 39-40.) She could stay in one position, either sitting, standing, or walking, for 15 to 20 minutes before needing to lie down. (Tr. at 44.) Plaintiff needed to lie down or recline to relieve pain three or four times, for 40 minutes to one hour, during a typical eight-hour day. (Tr. at 44-45.) Plaintiff lived with her boyfriend, who did "yard work, vacuuming, anything that might have heavy lifting involved. Just things that I, I can't do." (Tr. at 47.)

### 1. **Objective Medical Evidence**

The ALJ first found that Plaintiff's alleged physical limitations were not "well supported by the record." Objective medical evidence is a relevant consideration regarding a claimant's credibility. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the [ALJ] can consider in his credibility analysis."); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Because an ALJ cannot simply state that a claimant's testimony is contradicted by the record, see Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination."), the ALJ must specifically identify which "testimony is not credible and what evidence suggests the complaints are not credible," Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

In support of his finding, the ALJ states the following:

> The undersigned has taken into consideration the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain, as well as precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; other treatment, other than medication, for relief of pain; functional restrictions; and the claimant's daily activities, and finds that her allegations of disabling pain and limitations are out of proportion with the record.
>
> Magnetic resonance imaging of the claimant's lumbar spine noted disc desiccation at L1-L2, mild post annual bulging with facet arthrosis, moderate central canal stenosis, neural foraminal narrowing at L4-L5, spondylosis, bilateral neural foraminal narrowing, and degenerative disc disease at L5-S l. (Exhibits 1F, p. 1; 2F, p. 8; 7F, p. 49; and 11F, p. 1). Physical examination noted some inconsistencies with the claimant's allegations, such as; the claimant was able to squat fully at an examination. (Exhibit 2F, p. 4). Additionally, the claimant demonstrated normal strength throughout, full range of motion with some subjective complaints of pain. (Exhibits 3F, p. 3; 4F, p. 7; 7F, pp. 38 and 56; 8F, pp. 8 and 9; and 10F, pp. 2 and 4). Finally, the claimant demonstrated normal gait and was able to perform several walking exercises without difficulty, which is inconsistent with the claimant's allegations. (Exhibits 3F, p. 2; 4F, p. 7; 6F, pp. 1, 4, 8, and 9; 7F, p. 38; 8F, pp. 1, 3, 4, and 6; and 10F, pp. 3, 8, 9, 11, and 12). These objective findings support some of the claimant's allegations, and were accounted for in the residual functional capacity restricting her to standing and/or walking up to two hours and sitting at least six hours in an eight-hour day; occasionally climbing ramps and stairs, but never ladders, ropes, or scaffolds; occasionally stooping, but never crawling or crouching; and that the claimant should avoid concentrated exposure to extreme cold, wetness, humidity, vibration, unprotected heights, and moving and dangerous machinery.
>
> The claimant is 64 inches tall and weighs approximately 205 pounds (Exhibit 7F, p. 100), placing her body mass index (BMI) at 35.18, within the range considered obese under Social Security Ruling (SSR) 02-1p. The claimant's obesity, while not stated by any physician to be disabling, was considered in terms of its possible effects on claimant's ability to work. Although obesity is no longer a listed impairment, Social Security Ruling 02-1p provides important guidance on evaluating obesity in adult and child disability claims. Importantly, however, the undersigned will not make assumptions about the severity or functional effects of obesity combined with other impairments. In this instance, the record shows the claimant's obesity causes or contributes to functional limitations. The above finding limiting the claimant to a range of sedentary work takes into consideration the claimant's obesity on her physical residual functional capacity.

(Tr. at 21-22.)

The Court finds that the ALJ's specific recital of medical evidence with multiple citations to the record, specifically addressing the limitations testified to by Plaintiff at the hearing provides a clear and convincing reason for rejecting Plaintiff's credibility.

\\\

\\\

1       **2.     Activities of Daily Living**

The ALJ determined that Plaintiff's allegations regarding her pain and limitations were inconsistent with her activities of daily living. An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. See Burch, 400 F.3d at 681. But, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014). Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn, 495 F.3d at 639 (emphasis added).

Here, the ALJ found that Plaintiff's ability to perform personal care routines like dressing, bathing, prepare her own meals and feeding herself, doing laundry, and folding clothes without difficulty was inconsistent with the severity alleged. Additionally, the ALJ found that Plaintiff's ability to go out alone, drive, and go shopping for groceries indicated that she was not as limited as alleged. (Tr. at 22.)

The Court finds that although the ALJ provides a list of activities attempting to demonstrate inconsistency, he never specifies how long or how often Plaintiff can engage in these activities or if the activities comprise a substantial part of Plaintiff's day. The ALJ also never specifies how engaging in these activities is inconsistent with Plaintiff's specific allegations of disability – leaving the Court infer inconsistency from its review from the record. The ALJ also makes no finding as to whether these activities are transferrable to the workplace. The ALJ's listing of activities does not clearly detail which part of Plaintiff's testimony is not credible or what evidence undermines Plaintiff's complaints. The ALJ's conclusory findings do not equate to clear and convincing reasons.

In summary, having considered both of the factors addressed by the ALJ to discount Plaintiff's credibility, the Court concludes that, overall, the ALJ fails to provide a sufficient

1 basis to find Plaintiff's allegations not entirely credible. Thus, the ALJ has not supported his
2 decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and,
3 therefore, the Court finds error.

## V. CONCLUSION

5 "[R]emand for further proceedings is appropriate where there are outstanding issues
6 that must be resolved before a determination can be made, and it is not clear from the record
7 that the ALJ would be required to find claimant disabled if all the evidence were properly
8 evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez v. Astrue, 572
9 F.3d 586, 593 (9th Cir. 2009)). "[T]he proper course, except in rare circumstances, is remand
10 to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16
11 (2002) (per curiam). The Ninth Circuit has held that when "additional proceedings can
12 remedy defects in the original administrative proceeding, a social security case should be
13 remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "to the
14 Secretary for proper consideration of step three equivalence"). Here, the record contains
15 evidentiary conflicts that make an award of benefits inappropriate and require further
16 evaluation on remand. Specifically, remand is appropriate for a renewed residual functional
17 capacity assessment, which accurately takes into consideration OTR Hymen's assessment,
18 as well as, Plaintiff's subjective complaints.

19 For the reasons discussed in this Order, the Commissioner's decision will be vacated
20 and this matter will be remanded for further administrative proceedings consistent with this
21 Order.

22 Accordingly,

23 **IT IS ORDERED** that the Commissioner's decision is **VACATED** and this matter
24 is **REMANDED** to the Commissioner for further administrative proceedings as set forth in
25 this Order;

26 \\\
27 \\\
28

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 27th day of March, 2019.

_____
Michelle H. Burns
United States Magistrate Judge